**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**STEVEN LYNN BUTLER, II,**

         **Plaintiff,**

 vs.               **6:15-cv-00455
                     (MAD)**

**CAROLYN W. COLVIN,** *Acting
Commissioner of Social Security*,

         **Defendant.**
_____

**APPEARANCES:**         **OF COUNSEL:**

**OLINSKY LAW GROUP**      **HOWARD D. OLINSKY, ESQ.**
300 South State Street, Suite 420
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**  **KRISTINA D. COHN, AUSA**
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

  Steven Lynn Butler, II, ("Plaintiff") commenced this action on April 15, 2015, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* Dkt. No. 1.

### II. BACKGROUND

Plaintiff's date of birth is August 7, 1981, which made him thirty years old on August 1, 2012, the alleged onset of his disability. *See* Dkt. No. 9, Administrative Transcript ("T."), at 168. Plaintiff's formal education culminated in an Associate's Degree in general studies, and he further completed three semesters toward a Bachelor's Degree in health administration. *See id.* at 32-34. Plaintiff has not completed any vocational or specialized training. *See id.* at 207. In his everyday living, Plaintiff is able to take care of his personal hygiene, remember to take his medications, prepare his own meals, launder clothes, clean dishes, walk at a distance of six blocks, collect the mail, watch television, play video games, and use a computer. *See id.* at 41, 220-223. He is also his household's child care provider seven days a week. *See id.* at 355.

Plaintiff lives with his three sons, who were six, ten, and twelve years old at the time of the 2013 hearing, and his girlfriend and her daughter. *See id.* at 40. Although he prefers to be alone, he spends time with his children. *See id.* at 224. Plaintiff uses a cane, which he purchased on his own, if he is planning to walk longer than fifteen to twenty minutes. *See id.* at 226. Plaintiff disclosed that he is able to follow spoken and written instructions and that he does not have any problems getting along with bosses, teachers, police, landlords, and other people in authority. *See id.*

Plaintiff's most recent past relevant work includes working at the distribution center for Family Dollar Services, Inc., in loss prevention from 2006 through July 31, 2012. *See id.* at 207, 235. Prior to that position, Plaintiff also worked in loss prevention for Pep Boys from 2004 through 2006. *See id.* at 181-82, 236. In 2003, Plaintiff was an inventory manager at Petsmart, Inc., and was employed by Martins Foods of South Burlington. *See id.* at 182, 237. He worked in retail in 2002, and he made cable wire for Omega Wire, Inc., (reported by Plaintiff as International Wire) from 2001 through 2002. *See id.* 181-82, 239. Plaintiff was working for

Omega Wire, Inc., when he injured his back at work, which require surgical intervention in 2002. *See id.* at 42-43. Plaintiff underwent a lumbar spinal fusion, laminectomy, and diskectomy in April 2002, which was noted by the surgeons to have been a complicated surgery. *See id.* at 364, 371-75. He was able to work after he recovered from his surgery up until July 31, 2012 when his job was outsourced and his physician said he was unable to work. *See id.* at 44-45.

Plaintiff testified that he was not able to work again due to back pain. *See id.* at 36. He claims that he suffers from failed back syndrome and a bulging disc, among other back conditions, causing back and leg pain, and he also claims that he suffers from anxiety, depression, insomnia, and migraines, which causes concentration problems and forgetfulness. *See id.* at 47-48, 57-58, 206. Plaintiff's back conditions are medically treated by Dr. Glenn F. Thibault, M.D., a primary care physician, Dr. Craig Montgomery, M.D., a neurosurgeon, and Dr. Denny Battista, M.D., a pain management specialist/orthopedist. *See id.* at 309-24, 331-33, 336-41, 363-66, 380-85. His anxiety, depression, insomnia, and headaches were medically treated by Dr. Thibault. *See id.* at 309-24, 363-66.

On December 14, 2012, Plaintiff protectively filed applications for DIB and SSI. *See id.* at 168-74, 202. Both applications were denied at the initial level by the state agency pursuant to 20 C.F.R. §§ 404.1503 ; 416.903. *See* T. at 55, 57-80, 94-103. Plaintiff then requested a hearing by an administrative law judge. *See id.* at 102. A video-conference hearing was conducted on December 5, 2013 before Administrative Law Judge James G. Myles (the "ALJ"). *See id.* at 28-54. The ALJ issued an unfavorable decision to Plaintiff dated December 20, 2013. *See id.* at 14-25. The ALJ made the following determinations: (1) Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017; (2) Plaintiff has not engaged in substantial gainful activity since August 1, 2012, the onset of the alleged disability; (3)

3

Plaintiff's severe impairments include status-post lumbar spinal fusion and laminectomy with scarring, nerve damage with radiculopathy, obesity, depression, and anxiety; (4) Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a Listed Impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listed Impairment(s)"); (5) Plaintiff has the residual functional capacity ("RFC") to perform routine, unskilled work at the sedentary work level as defined in 20 C.F.R. 404.1567(a) and 416.967(a), except that Plaintiff can occasionally crouch, balance, stoop, kneel, and crawl and should avoid ladders, ropes, and scaffolds as well as loud noise, vibration, and pulmonary irritants; (6) Plaintiff is not capable of performing any past relevant work; and (7) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See id.* Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from August 1, 2012 through the date of the ALJ's decision. *See id.* at 24.

Plaintiff timely filed a request for a review of the ALJ's decision with the Appeals Council, *see id.* at 265-69, and, in a notice dated February 20, 2015, the request was denied rendering the ALJ's decision the Commissioner's final decision, *see id.* at 1-5. Plaintiff then commenced this action for judicial review of the denial of his claims by the filing of a complaint on April 15, 2015. *See* Dkt. No. 1. Both parties have moved for judgment on the pleadings. *See* Dkt. Nos. 11, 12. The Court orders that the Commissioner's decision is affirmed.

### III. DISCUSSION

**A. Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine de novo whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3);

*Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 447 (2d Cir. 2012); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). The Court must examine the administrative transcript as a whole to determine whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *See Brault*, 683 F.3d at 447; *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)). The Second Circuit has explained that upholding a determination based on the substantial evidence standard where the legal principals may have been misapplied "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986. However, if the record is such that the application of the correct legal principles "could lead to only one conclusion, there is no need to require agency reconsideration." *Id.*

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotation marks omitted). If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and the court is not permitted to substitute its analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("[The court] would be derelict in [its] duties if we simply paid lip service to this rule, while shaping [the court's] holding to conform to our own interpretation of the evidence"). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment

5

for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984). This very deferential standard of review means that "once an ALJ finds facts, [the Court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

**B.     Analysis**

Plaintiff contends that the ALJ's determination denying his disability applications should be remanded back to the Commissioner for the following reasons: (1) Plaintiff met the criteria for a Listed Impairment under § 1.04 Disorders of the Spine; (2) Plaintiff's medical condition of migraines is a severe impairment; (3) the RFC is not supported by substantial evidence because the treating physician rule was not properly applied and the proper weight was not assigned to a consultative examiner; (4) the credibility determination is not supported by substantial evidence because the ALJ failed to properly analyze the factors related to Plaintiff's pain and other symptoms; and (5) the step-five determination is not supported by substantial evidence because the hypothetical the ALJ posed to the vocational expert was incomplete. *See* Dkt. No. 11 at 14-27.

*1. Five-step analysis*

For purposes of both DIB and SSI, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

> The Social Security Administration regulations outline the
> five-step, sequential evaluation process used to determine whether a

> claimant is disabled: (1) whether the claimant is currently engaged
> in substantial gainful activity; (2) whether the claimant has a severe
> impairment or combination of impairments; (3) whether the
> impairment meets or equals the severity of the specified
> impairments in the Listing of Impairments; (4) based on a "residual
> functional capacity" assessment, whether the claimant can perform
> any of his or her past relevant work despite the impairment; and (5)
> whether there are significant numbers of jobs in the national
> economy that the claimant can perform given the claimant's residual
> functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).

### *2. Severe impairments*

At step two, the medical severity of a plaintiff's impairment is evaluated. A Plaintiff must have a "severe medically determinable " impairment. 20 C.F.R. §§ 404.1520; 416.920. The "severity regulation", states:

> If you do not have any impairment or combination of impairments
> which significantly limits your physical or mental ability to do basic
> work activities, we will find that you do not have a severe
> impairment and are, therefore, not disabled. We will not consider
> your age, education, and work experience.

20 C.F.R. §§ 404.1520(c); 416.920(c), *see Bowen v. Yuckert*, 482 U.S. 137, 140-141 (1987). The phrase "basic work activities" are "the abilities and aptitudes necessary to do most jobs" and include

> [p]hysical functions such as walking, standing, sitting, lifting,
> pushing, pulling, reaching, carrying, or handling... seeing, hearing,
> and speaking . . . [u]nderstanding, carrying out, and remembering
> simple instructions . . . [u]se of judgment . . . [r]esponding
> appropriately to supervision, co-workers and usual work situations .
> . . [d]ealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b); *see Bowen*, 482 U.S. at 141.

7

The purpose of the severity regulation was to create a "threshold determination of the claimant's ability to perform basic, generically defined work functions, without at this stage engaging in the rather more burdensome medical-vocational analysis required by [42 U.S.C.] § 423(d)(2)(A)." *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995). In *Bowen v. Yuckert*, the Supreme Court upheld this regulation to screen out *de minimis* claims – those claims where there are "slight abnormalities that do not significantly limit any 'basic work activity.'" *Bowen*, 482 U.S. at 158 (O'Connor, J. concurring). Plaintiff contends that the ALJ erred when he did not include migraines among his severe impairments at step two of the disability analysis. *See* Dkt. No. 11 at 17-18.

Plaintiff directs the Court to the records of Dr. Thibault where Plaintiff made subjective complaints of headaches. *See* Dkt. No. 11 at 18. The Court finds that the record is void of medically determinable evidence that Plaintiff suffered from migraines and, therefore, the medical evidence supports the ALJ's determination that Plaintiff's migraines did not meet the severity threshold, singly or in combination. During the period of August 2012 through March 2013, Dr. Thibault notes that Plaintiff complains of headaches intermittently, but he does not diagnose Plaintiff with migraines. *See* T. at 309-26, 263-66. On November 20, 2012, Dr. Thibault records that Plaintiff gave a history of "migraines" twice a year but described a headache that "waxes and wanes." *Id.* at 313. Further, Plaintiff complained of "sinusitis with occasional sinus headaches" to Dr. Montgomery, a neurosurgeon, but did not mention headaches or migraine symptoms again throughout his treatment from September 2012 through January 2013. *See id.* at 336-41, 380-85. Plaintiff did not mention headaches or symptoms of migraine to his pain management physician, Dr. Battista, or his previous primary care provider, Dr. Sarah Shiraz, M.D. *See id.* at 330-33, 270-89.

8

Accordingly, the only evidence of migraines is Plaintiff's intermittent complaints to one of his treating physicians about "waxing and waning" headaches. *See id.* at 313. If there is no evidence of a medically determinable impairment, an individual does not have a severe impairment at step two of the disability analysis. *See* SSR 96-4P, 1996 WL 374187, *1 (July 2, 1996) ("Policy Interpretation Ruling Titles II and XVI: Symptoms, Medically Determinable Physical and Mental Impairments, and Exertional and Nonexertional Limitations"). It is a longstanding policy of the Social Security Administration that "[a] 'symptom' is not a 'medically determinable physical or mental impairment' and no symptom by itself can establish the existence of such an impairment." *Id.* (stating that "[n]o symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be"). Here, there was evidence of Plaintiff's symptoms, but there was no medically determinable evidence that Plaintiff suffered from migraines.

### *3. Listed impairment*

At step three of the disability analysis, a plaintiff who meets or medically equals one of the Listed Impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("Listed Impairments"), is "conclusively presumed to be disabled and entitled to benefits." *Dixon v. Shalala*, 54 F.3d 1019, 2022 (2d Cir. 1995). Plaintiff contends that the ALJ failed to properly evaluate her claim under the Listed Impairments of § 1.04A (Disorders of the Spine) of 20 C.F.R. Part 404, Subpt. P, App. 1 ("§ 1.04A"). *See* Dkt. No. 11 at 14-17. In his evaluation of Plaintiff's claim under the Listed Impairment of § 1.04, the ALJ stated that the evidence

> fails to establish an impairment that is accompanied by signs that are reflective of listing-level severity. Also, none of the claimant's treating or examining physicians of record has reported any of the necessary clinical, laboratory, or radiographic findings specified therein.

9

T. at 17.

Section 1.04A of the Listed Impairments provides for a disability where there is a disorder of the spine that results in the compromise of a nerve root or the spinal cord *and*

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

In evaluating this listed impairment, the threshold criteria of the Regulation requires a disorder of the spine, which includes spinal stenosis, that results in the compromise of a nerve root or the spinal cord . *See id.*; *Otts v. Comm'r of Soc. Sec.*, 249 Fed. Appx. 887, 888-89 (2d Cir. 2007). Plaintiff argues that the radiographic evidence in the record establishes this criteria. *See* Dkt. No. 11 at 16. In support of this contention, Plaintiff reiterates the findings on the radiology test results. *See id.*

Plaintiff's pain management specialist, Dr. Battista, reviewed the Lumbar MRI scan and stated that there was "mild stenosis." *See* T. at 330. However, the medical evidence from Plaintiff's treating neurosurgeon, Dr. Montgomery, supports the ALJ's determination. Dr. Montgomery interpreted the radiology and stated that the testing, which included an EMG nerve conduction study, CT scan, and MRI scan, shows no evidence of ongoing nerve root compression or damage, adequate decompressive laminectomy, no evidence of continued compression or bony abnormalities or fractures, and no hardware failure. *See id.* at 338. As a result, the medical evidence demonstrates that Plaintiff does not meet the threshold criteria of a spinal stenosis that resulted in the compromise of a nerve root or spinal cord. Accordingly, there is substantial medical evidence supporting the ALJ's determination that Plaintiff's disorder of the spine does not meet or medically equal the listed impairment under § 1.04A. Although the ALJ could have

provided further detail in support of his determination at this step, the medical evidence in support of the ALJ's finding together with the lack of medical evidence to the contrary permits the Court to affirm that Plaintiff did not meet or medically equal a listed impairment. *See, e.g.*, *Otts*, 249 Fed. Appx. at 889.

### *4. Evaluating Opinion Evidence*

Plaintiff contends that the RFC is not supported by substantial evidence because the treating physician rule was not properly applied to Dr. Thibault's opinion and the proper weight was not assigned to consultative examiner, Dr. Christina Caldwell, Psy. D. *See* Dkt. No. 11 at 19-24. Specifically, Plaintiff argues that Dr. Thibault's opinion should have been accorded controlling weight because he is "the treating source of record most able to provide a detailed, longitudinal picture of Plaintiff's medical impairments." Dtk. No. 11 at 20. However, the medical evidence cited by Plaintiff includes his subjective complaints to Dr. Thibault and the ordering of diagnostic testing. *See id.* at 20. Dr. Thibault's medical opinions about the severity of Plaintiff's impairments and symptoms can be entitled to "controlling weight" when the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also* 20 C.F.R. § 404.1527(a)(2); *Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009) ("Although the final responsibility for deciding issues relating to disability is reserved to the Commissioner, . . . an ALJ must give controlling weight to a treating physician's opinion on the nature and severity of the [plaintiff's] impairment when the opinion is well-supported by medical findings and not inconsistent with other substantial evidence."); *Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641, 643-44 (2d Cir. 2007) (noting that inconsistent evidence can be in the form of opinions of other medical experts).

11

If an ALJ refuses to assign a plaintiff's treating physician's opinion controlling weight, he or she must state a good reason for that determination. *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011). The "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (quoting *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)). The regulations list factors the ALJ should consider when evaluating the appropriate weight to assign to medical opinions, including a treating source's opinion that is not assigned controlling weight. *See* 20 C.F.R. §§ 404.1527(c); 416.927(c). The factors include (1) the frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist; and (5) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(c); 416.927(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). A treating physician's opinion can be contradicted by other substantial evidence, such as opinions of other medical experts. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Otts v. Comm'r of Soc. Sec.*, 249 Fed. Appx. 887, 889 (2d Cir. 2007).

Dr. Thibault completed a medical source statement on November 21, 2013. *See* T. at 368-70. This medical source statement was based upon his medical treatment of Plaintiff for fourteen months. *See id.* at 368. Dr. Thibault opined that Plaintiff suffers from post-laminectomy pain syndrome and that his prognosis is fair, but Dr. Thibault notes that Plaintiff "has been lost to medical care here since March 2013." *Id.* at 368. Dr. Thibault opines that Plaintiff (1) can sit for

thirty minutes at a time before needing to get up, (2) can stand for forty-five minutes at one time before needing to sit or move, (3) can sit, stand, or walk for a total of two hours in an eight hour workday, (4) requires the use of a cane, (5) can never stoop/bend, crouch/squat, climb ladders, or climb stairs and can only occasionally twist, (6) requires a thirty minute break every hour, and (7) will be off task more than twenty percent of the time, among other findings. *See id.* at 368-70.

The ALJ stated that Dr. Thibault's assessment of plaintiff's limitations are "widely inconsistent with the record of evidence" and contradicted by Plaintiff's testimony about his daily activities and abilities. *See id.* at 22-23. The ALJ discussed Plaintiff's pain management specialist/orthopedist's medical findings that Plaintiff had a normal gait with a normal heel-and-toe walk, normal lower extremity muscle tone, normal paraspinous muscle tone, no muscle spasm, no mid-line spinous or paraspinous tenderness, no sciatic notch tenderness, and painless active range of motion with mild restriction on flexion and lateral bending and moderate restriction on extension. *See id.* at 331-32. The ALJ also discussed Dr. Montgomery's findings that Plaintiff has some chronic damage to the left L5-S1 region but that there is no evidence of nerve root compression or damage and there is no evidence of continued compression or bony abnormalities or fractures. *See id.* at 338. The ALJ considered the assessment performed by Dr. Tanya Perkins-Mwantuali, M.D., in consultation, who found that Plaintiff walked with a normal gait, performed a full squat, walked on his heels and toes without difficulty, had full muscle strength bilaterally in all extremities, and did not appear to be in acute distress. *See id.* at 354-57. The ALJ compared Plaintiff's activities of daily living with Dr. Thibault's medical source statement and found that there were significant inconsistencies. *See id.* at 21. Specifically, Plaintiff provides childcare to the collective four minor children in his household, plays video games, and performs self care, cooking, cleaning, and shopping. *See id.* at 21.

13

As a result, the ALJ concluded that Dr. Thibault's opinion is not supported by the medical evidence of Plaintiff's treating physicians who are specialists in neurosurgery and orthopedic pain management and that Plaintiff's subjective complaints are contradicted by his everyday activities. The ALJ acknowledged that Dr. Thibault is a treating physician, and he properly considered the regulatory factors before assigning the opinion less than controlling weight. *See id.* at 22. The Court finds that there was no legal error committed by the ALJ in assigning less than controlling weight to Dr. Thibault's opinion. Further, the Court further finds that the ALJ's assessment of Dr. Thibault's opinion is supported by substantial evidence.

Plaintiff next argues that the ALJ improperly assigned "significant weight" to the state-agency assessments while assigning "some weight" to Dr. Caldwell, a consultative psychiatric examiner. *See* Dkt. No. 11 at 23-24. Contrary to Plaintiff's contention, the ALJ did not "reject[] every examining medical opinion of record (treating and consultative) in favor of the non-examining assessments of state-agency officials." *Id.* at 23. The ALJ is required to consider a state agency consultant's findings of fact regarding the severity of an individual's impairment as an expert opinion because these consultants "are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6P, 1996 WL 374180, *1-2 (July 2, 1996) ("Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence").

In this case, the ALJ notes that the state-agency assessments are consistent with his findings that Plaintiff spends time socializing with his family everyday and lives with his girlfriend. *See* T. at 18. The ALJ accepted Dr. Caldwell's opinion that Plaintiff's attention,

concentration, recent memory, and remote memory were intact and that he is capable of following and understanding simple direction and instructions. *See id.* at 21. The ALJ also noted that Plaintiff is able to maintains a driver's license even though he claims to have stopped driving shortly before the hearing. *See id.*

The ALJ found that Dr. Caldwell's opinion – that Plaintiff is limited in performing simple tasks independently, performing complex tasks independently, making appropriate decisions, relating adequately with others, and appropriately dealing with stress – is not supported by the record. *See id.* The ALJ specifically cites to Plaintiff's activities of daily living that are inconsistent with these findings, including providing childcare to the four children in his household seven days a week, playing video games, and caring for himself and the household as contrary to Dr. Caldwell's limitations. A state agency psychological consultant can be entitled to greater weight than an examining psychologist where that consultant's opinion is based on a review of a complete record compare to the limited information that was available to an examining source. *See* SSR 96-6P, 1996 WL 374180, at *3. Here, Dr. Caldwell examined Plaintiff without the benefit of the medical evidence or the record. In comparison, Dr. J. Echevarria, a psychiatrist, was able to review all the medical evidence in the file, including Dr. Caldwell's report before he concluded that Plaintiff "retains the capacity to perform [substantial gainful activity], psychiatrically." T. at 63.

Further, the records from Dr. Thibault are also inconsistent with Dr. Caldwell's stated limitations. Dr. Thibault found that Plaintiff's anxiety was controlled, and, although his mood and affect were anxious, his thought processes and content did not demonstrate any impairment. *See id.* at 364. Consequently, the Court finds that Plaintiff properly evaluated and assigned weight to the state-agency psychiatric opinion and Dr. Caldwell's medical source statement.

*5. Credibility Analysis*

Plaintiff contends that the ALJ failed to properly evaluate the credibility factors listed in 20 C.F.R. §§ 404.1529(c)(3)(i)-(iv), 416.929(c)(3)(i)-(iv) and discussed in SSR 96-7P, 1996 WL 374186 (July 2, 1996) ("Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements"). *See* Dkt. No. 11 at 24-27. Specifically, Plaintiff claims that the ALJ improperly relied on his observations of Plaintiff from the hearing and that the ALJ improperly characterized Plaintiff's activities of daily living. *See id.* As a result, the credibility finding is not supported by substantial evidence according to Plaintiff. *See id.* at 26.

An ALJ assesses a plaintiff's subjective symptoms using a two-step process. *See* 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, at *1. At the first step, the ALJ must determine whether a plaintiff has an underlying impairment that is established by acceptable clinical diagnostic techniques and could reasonably cause a plaintiff's symptoms. *See* SSR 96-7P, 1996 WL 374186, at *2. If an impairment is shown, the ALJ "must evaluate the intensity, persistence, and limiting effects of the [plaintiff's] symptoms to determine the extent to which the symptoms limit the [plaintiff's] ability to do basic work activities." *See id.* at *2. "When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole." *Wells v. Colvin*, 87 F. Supp. 3d 421, 431 (N.D.N.Y. 2015); *see also Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999).

The entire case record includes a plaintiff's history, laboratory findings, a plaintiff's statements about symptoms, statements and information provided by treating and non-treating physicians, and statements from other people that describe how the symptoms affect a plaintiff.

*See* 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, at *1. Factors that are relevant to a plaintiff's symptoms include (1) the plaintiff's daily activities, (2) location, duration, frequency, and intensity of symptoms, (3) precipitating and aggravating factors, (4) medications and their side effects, (5) treatment received, (6) measures used to alleviate symptoms, (7) and other factors concerning functional limitations and restrictions due to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii). The ALJ found that Plaintiff had underlying, medically determinable impairments that could reasonably be expected to produce Plaintiff's alleged symptoms. *See* T. at 22. However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible. *See id.* Contrary to Plaintiff's contention, the Court finds that the ALJ properly evaluated Plaintiff's credibility.

Plaintiff argues that the ALJ's observation that Plaintiff did not appear to be in any obvious distress was improper. *See* Dkt. No. 11 at 26. Indeed, the ALJ noted in his decision that Plaintiff "did not appear to be in any obvious distress" at the hearing but acknowledged that his observation "is only a snapshot of the entire mosaic." *See* T. at 22. The observations of a plaintiff's physical demeanor during a hearing is expressly designated as evidence pursuant to the Social Security Regulations. *See* 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3); *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998). "In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7P, 1996 WL 374186, at *5.

The Second Circuit has found that an ALJ's lay observation that a claimant does not appear to be in distress during a hearing is entitled to limited weight and that it is not an error for

an ALJ to weight his or her observation in determining credibility. *See Schaal*, 134 F.3d at 502 (stating that there is no *per se* legal error where the ALJ considers a claimant's physical demeanor in the credibility analysis). In this case, the ALJ's observation of Plaintiff's physical demeanor has been recorded in the transcript so it is evidence within the record. *See* T. at 36. The ALJ's decision acknowledges the limited value of his observation when he describes it as a "snapshot of the entire mosaic." *Id.* at 21. The ALJ further lays out the medical evidence to support his credibility findings, including the findings from Dr. Perkins-Mwantuali and Dr. Thibault. *See id.* He considered Plaintiff's activities of daily living, including caring for his children, completing household chores, and past and planned medical treatment, including pain medications and nerve stimulator. *See id.* at 19-22. The Court finds that the ALJ did not err in considering the documented observations of Plaintiff during the hearing and that the credibility determination is supported by substantial evidence in the record.

### *6. Vocational expert*

Plaintiff lastly contends that the vocational expert's opinion, i.e., considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform, is not supported by substantial evidence. *See* Dkt. No. 11 at 26-27. This argument is based upon his contentions that the expert opinions of his treating physician and the consultative physician were not appropriately weighed in the RFC determination and that the credibility finding was not supported by substantial evidence. *See* Dkt. No. 11 at 26-27. As discussed in this decision, the Court finds that the ALJ properly weighed the expert opinions and properly assessed Plaintiff's credibility. Accordingly, Plaintiff's repetitive arguments are rejected. *See Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 319 (W.D.N.Y. 2013) (citing *Wavercak v. Astrue*, 420 Fed. Appx. 91, 95 (2d Cir. 2011).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the Parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Dated: July 20, 2015
      Albany, New York

Mae A. D'Agostino
U.S. District Judge